Commonwealth ex rel. Lane, Appellant, *v.* Baldi.

Argued November 22, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*J. R. Siegert,* with him *Joseph Patrick Gorham,* for appellant.

*Victor Wright,* with him *Armand Della Porta,* Assistant District Attorney, for appellee.

OPINION PER CURIAM, January 3, 1955:

Relator's petition for a writ of *habeas corpus* re extradition proceedings could be dismissed because of petitioner's failure to comply with Rule 45 of this Court relating to the service of copies of brief and record. Since, however, the appeal relates to the extradition of relator to a sister state, and the single question is one of identity, we have concluded to pass upon the merits and have examined the original record with the notes of testimony. We agree with the hearing judge that relator was sufficiently identified by two witnesses.

The denial of relator's petition by the court below is affirmed on the opinion of Judge BOK.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

When another State demands extradition of a person living within the boundaries of our Commonwealth, the very least which should be required of the demanding State is unqualified identification of the arrested person as the fleeing culprit. A study of the transcript of the testimony taken in this case does not convince me that the identifying testimony was of such a character as to justify the forcible removal from Pennsylvania of one who is here minding his own affairs.

The defendant George Lane was charged in Virginia with felonious assault and battery. Charles B. English, sheriff of Westmoreland County, Virginia, who came to Pennsylvania to take the defendant to Virginia, was asked: "Do you know this man to be the George Lane wanted in the warrant from the Governor of Virginia?" He replied: "I can't say." He was then asked: "You don't know whether he is?" He repeated: "I can't say."

William Thomas Kelly, who was the alleged victim of the assault and battery (cutting), testified: "Q. Did you file a complaint against George Lane? A. No, sir. Q. Were you a witness against George Lane in Virginia? A. Yes, sir. Q. And what happened? Why were you a witness? A. (No response.) Q. Did anything happen to you in connection with George Lane? A. No. Q. Go on, explain. No what? A. (No response.) BY THE COURT: Q. What is your name? A. William Kelly. Q. All right, Kelly, look at this man (indicating defendant). What is his name? A. This man here (indicating defendant)? Q. Yes. What is his name? A. I don't know, sir."

Later he did identify the defendant as George Lane, but in cross-examination he testified as follows: "Q. Isn't it possible you may be mistaken in saying that he is the man who cut your face? Isn't it possible that you may have been mistaken? A. (No response.)

By Mr. Della Porta: Q. Look up to the Judge and answer the question. A. I don't know. By Mr. Gorham: Q. It is possible that you don't know? A. (No response.) Mr. Gorham: All right, that's all."

Fuhrman E. Dixon, the owner of the establishment in which the alleged cutting occurred, first testified that George Lane was the man who cut Kelly, but later his identification considerably wavered: "Q. I asked you a question. Did you see it? A. No, sir, I didn't see him. Q. Well then, why did you say that he is the man who cut Kelly's face? A. At the time I approached the scene, sir, in my place, George and Kelly was in a row, and a special officer I have came in and broke them up."

Still later he testified that he did see Lane cut Kelly, but a few questions further on he testified under cross-examination: "Q. Did you actually see Lane cut Kelly? That's a very simple question. A. No, sir, I did not."

In extradition cases the Commonwealth is, of course, not required to establish the guilt of the arrested person beyond a reasonable doubt, but the authorities are unanimous that the identification must be unequivocal and certain. It is a very serious matter to seize a man in his home, take him from his employment, wrest him from his companions, uproot all his family and social obligations, disorganize his whole life, both present and future, to transport him to another State (even though eventually he might be acquitted), when there is the possibility, even the likelihood, that he is not the person sought.

Detectives and sheriffs arriving from other States to take away a law-abiding citizen in Pennsylvania should appear with something more authoritative than handcuffs and shackles plus extradition papers.

It seems to me that the arresting authorities from Virginia should have been required to submit further evidence proving absolute identification of George Lane before being allowed to transport away a man who, according to the present record, can be the sought-after fugitive only as the result of an official guess.